A. B. MADISON AVE. CORP., Landlord, *v.* CHARLES COHN, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, January 31, 1945.

*Bernard R. Lauran* and *Joseph Caine* for landlord.

*Irving D. Neustein* for tenant.

*Joseph Platzker,* Chairman, Mayor's Committee on Rents, *amicus curiæ.*

LEWIS, J. In this summary proceeding to dispossess the tenant as a holdover, a question is presented as to the effect of an emergency rent law on pending proceedings. A jury has brought in the verdict that there was no oral agreement by the parties extending the tenancy beyond January 15, 1945, the date of termination of the lease between them. The trial was had

on January 26th, and, at the outset, the tenant moved to dismiss the petition on the ground that, under section 8 of chapter 3 of the Laws of 1945 (effective January 24th), he cannot be removed during the public emergency therein declared by the Legislature. Decision of the motion was reserved until the determination by the jury of the question of fact above mentioned. During the trial, the tenant also objected to the sufficiency of the notice served on him by the landlord, which accelerated the termination of the lease from January 31st to January 15th. This objection was overruled on the ground that said notice was in accordance with the provisions of the lease.

Section 8 of the new law provides: " So long as the tenant continues to pay the rent to which the landlord is entitled * * * no tenant shall be removed from any commercial space, by action or proceeding to evict or to recover possession * * * nor shall any person attempt such removal * * * notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated * * * ." Certain exceptions are then made, but none of them applies here.

It was conceded at the trial that the tenant had offered to pay, as rent for the period from January 15th to January 31st, the amount specified in the expired lease, but the landlord had refused to accept such payment. It is unnecessary here to discuss the ceiling now put over commercial rents. It is sufficient, in this instance, to state that the landlord would not be entitled to *more* rent under the new law. Although the landlord cannot now profit by it, a lease with the prospective tenant was marked in evidence, under the terms of which he would have received 50% more rent for the entire floor.

The offer by Cohn of the check in the amount of the old rent, and its refusal by the landlord, did establish that the conventional relationship of landlord and tenant had terminated. (*Stern v. Equitable Trust Co.,* 238 N. Y. 267.) It follows that the landlord then had the right to treat Cohn as a trespasser and to bring the dispossess proceeding instituted by service of the precept on January 17, 1945; and that now, normally, he would be entitled to a final order giving him possession of the premises, and to the issuance of a warrant of eviction.

The question becomes: Has the new law suspended the right to a final order and a warrant, and reinstated Mr. Cohn as a tenant? Did the Legislature, speaking as of January 24th, say in effect: so long as Cohn continues to pay the rent to which the landlord is entitled, he shall not be removed by action or proceeding to evict or to recover possession, notwithstanding that his lease has expired as of January 15th; and the landlord instituted this proceeding on January 17th?

I hold that the language of the act clearly protects Mr. Cohn against eviction. Said the Legislature, speaking as of January 24th: "notwithstanding * * * that his lease * * * *has expired* or otherwise *terminated,*" no tenant shall be removed. (§ 8; italics supplied.) The prohibition contained in the section is directed most strongly against "removal", as witness: "no tenant shall be removed from any commercial space, by action * * * to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession". By this language, the Legislature indicated its concern for the occupants of commercial space whose leases had expired before the new law took effect, and who then faced summary proceedings for their eviction. The termination of their conventional status as tenants was considered, they were made statutory tenants (*Stern* v. *Equitable Trust Co., supra*), and the right to remove them was suspended during the emergency.

This conclusion is confirmed by the history of events preceding passage of the legislation. On March 18, 1944, the Legislature created a Joint Legislative Committee "to inquire into and to investigate (a) All rents and rental agreements of premises occupied for commercial purposes in cities having a population of one million or more". (3 N. Y. State Assembly Journal, 1944, p. 2382.) This Committee reported to the Legislature on December 21, 1944, recommending an act by the State Legislature as "imperative in order to avert the evils" with which its report was replete. Among its specific recommendations was No. 7: "Specifying that, after the effective date of the act, regardless of whether the lease of any tenant subject thereto *has expired or shall expire* no landlord shall be permitted to evict any tenant so long as the tenant pays the statutory rent * * * and complies with all the terms of the lease under which he occupied the premises on March 1, 1943, except the terms thereof fixing the amount of rent". (Italics mine.) (N. Y. Legis. Doc., 1944, No. 2, p. 18.)

On January 4, 1945, Chairman Stevens of the Joint Legislative Committee introduced the bill which, on January 24th, became chapter 3 of the Laws of 1945.

We are indebted for this history, and for the technical background of the emergency, to Mr. Joseph Platzker, Chairman of the Mayor's Committee on Rents, who was present at the trial as *amicus curiæ*.

The motion to dismiss the petition, made at the beginning of the trial, is therefore granted. Final order for the tenant accordingly.